FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN 2 4 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
)    No. 13 CR 0088
vs. )
)    Violations: Title 18, United States Code,
WARREN BALLENTINE )    Sections 1014, 1341, 1343, and 1344
)

The SPECIAL JANUARY 2012 GRAND JURY charges:    JUDGE KENNELLY

MAGISTRATE JUDGE FINNEGAN

1.    At times material to this indictment:

a.    Defendant WARREN BALLENTINE was an attorney licensed to practice law in Illinois and owned the Law Offices of Warren Ballentine, LLC, in Country Club Hills, Illinois.

b.    People's Choice Home Loans, Fremont Investment and Loan, Community First Bank, and Long Beach Mortgage Company were lenders that made loans secured by mortgages.

c.    Fremont Investment and Loan and Community First Bank were institutions whose deposits were insured by the Federal Deposit Insurance Corporation.

d.    Lenders required loan applicants to provide truthful information, including information about the applicant's intention to use the property as a primary residence, employment, income, and the sales price, which information was material to lenders' approval, terms, and funding of loans.

e.    Lenders considered loans made to applicants who intended to use a property as their primary residence to be less risky, and therefore offered such loans on more

favorable terms for the applicant, including providing financing for the full amount of the purchase price and a lower interest rate.

    f.  Lenders sold mortgage loans to other lenders and institutions. Lenders disclosed that mortgage loans could be sold and the likelihood that the mortgage loans would be sold. The information provided in loan applications and supporting documents, including the applicant's intention to use the property as a primary residence, employment, income, and the sales price of the property, was material to successors' decision to purchase mortgage loans.

    2.  Beginning no later than in or about December 2004, and continuing until in or about February 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

WARREN BALLENTINE,

defendant herein, along with others known and unknown to the Grand Jury, devised, intended to devise, and participated in a scheme to defraud lenders and successors and to obtain money and property from lenders by means of materially false and fraudulent pretenses, representations, and promises, which scheme affected financial institutions and is further described below.

    3.  It was part of the scheme that defendant WARREN BALLENTINE, together with co-schemer Bobbie Brown and others, fraudulently caused lenders to make at least eight loans totaling at least approximately $3.6 million by making materially false representations in documents submitted to lenders, including loan applications, HUD-1 settlement

2

statements, and occupancy statements, concerning, among other things, buyers' intention to use the properties they purchased as a primary residence, and for the purpose of executing the scheme caused deliveries by interstate carriers.

4.     It was further part of the scheme that defendant WARREN BALLENTINE represented buyers recruited by co-schemer Bobbie Brown and others at real estate closings, knowing that the buyers had been fraudulently qualified for mortgage loans to purchase properties, including properties located at 1506 S. Spaulding Avenue, Chicago, Illinois, 1321 W. 71st Street, Chicago, Illinois, 3008 W. Flournoy Street, Chicago, Illinois, 25725 S. Linden Avenue, Chicago, Illinois, 25733 S. Linden Avenue, Monee, Illinois, 1233 Alexander Drive, Woodridge, Illinois, 25526 S. Devonshire Lane, Monee, Illinois, and 21167 Sage Brush Lane, Mokena, Illinois.

5.     It was further part of the scheme that defendant WARREN BALLENTINE advised buyers at closings to sign documents that defendant BALLENTINE knew contained materially false representations, including:

> (a)     occupancy statements submitted to lenders that defendant BALLENTINE knew contained false and fraudulent information representing that buyers intended to use the properties they were purchasing as their primary residence;

> (b)     HUD-1 settlement statements submitted to lenders that defendant BALLENTINE knew contained false and fraudulent information about

3

payments provided to the buyers for purchasing the properties; and

(c)     loan applications submitted to lenders that defendant BALLENTINE knew contained false and fraudulent information, including false and fraudulent information about the buyers' intention to occupy the property.

6.     It was further part of the scheme that defendant WARREN BALLENTINE represented individual buyers at multiple closings within short time frames, knowing that the buyers were falsely representing that they would use each property they purchased as their primary residence, including, for example:

(a)     Buyer A, who obtained approximately $896,000 in loans to purchase three properties falsely represented to be owner-occupied, as detailed below:

(i)     On or about December 30, 2004, a $136,000 loan to purchase a property at 1321 W. 71st Street, Chicago, Illinois;

(ii)    On or about February 4, 2005, a $500,000 loan to purchase a property at 1506 S. Spaulding Avenue, Chicago, Illinois; and

(iii)   On or about February 9, 2005, a $260,000 loan to purchase a property at 25725 S. Linden Avenue, Chicago, Illinois; and

(b)     Buyer B, who obtained a total of approximately $1.2 million in loans to purchase two properties falsely represented to be owner-

occupied, as detailed below:

    (i)     On or about January 13, 2005, a $525,000 mortgage loan to purchase a property located at 3008 W. Flournoy Street, Chicago, Illinois; and

    (ii)    On or about February 18, 2005, a $689,000 mortgage loan to purchase a property located at 21167 Sage Brush Lane, Mokena, Illinois.

7.    It was further part of the scheme that defendant WARREN BALLENTINE was paid for serving as an attorney in transactions where defendant BALLENTINE knew buyers were signing and submitting false documents to lenders.

8.    It was further part of the scheme that defendant WARREN BALLENTINE, co-schemer Bobbie Brown, and others, did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

9.    On or about February 4, 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

WARREN BALLENTINE,

defendant herein, for the purpose of executing the scheme to defraud, knowingly deposited and caused to be deposited, to be sent and delivered by United Parcel Service, an interstate commercial carrier, according to the directions thereon, an envelope containing original

5

mortgage and closing documents, from Professional National Title in Chicago, Illinois, addressed to Kim W., Community Bank, 3725 Old Court Road, Baltimore, Maryland, relating to Buyer A's purchase of 1506 S. Spaulding Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     The allegations in paragraphs 1(a), (d), (e), and (f) of Count One of this indictment are incorporated here.

2.     At times material to this indictment:

       a.     Fremont Investment and Loan, Mercantile Mortgage, EquiFirst Corp., Mirabella Mortgage, Tri-Star Lending Group, Accredited Home Lenders, CTX Mortgage Co., LLC, and Mortgage Lenders Network USA were lenders that made loans secured by mortgages.

       b.     Fremont Investment and Loan was an institution whose deposits were insured by the Federal Deposit Insurance Corporation.

3.     Beginning no later than in or about February 2005, and continuing until in or about May 2006, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WARREN BALLENTINE,

defendant herein, along with others known and unknown to the Grand Jury, devised, intended to devise, and participated in a scheme to defraud lenders and successors and to obtain money and property from lenders by means of materially false and fraudulent pretenses, representations, and promises, which scheme affected a financial institution and is further described below.

4.     It was part of the scheme that defendant WARREN BALLENTINE, together

7

with co-schemers Wanda-Rivera Burton and Brenda Tibbs, and others, fraudulently caused

lenders to make at least twenty mortgage loans totaling at least approximately $6.1 million

by making materially false representations in documents submitted to lenders, including loan

applications, HUD-1 settlement statements, and occupancy statements, concerning, among

other things, buyers' intention to use properties they purchased as a primary residence, and

for the purpose of executing the scheme caused interstate wire transmissions.

     5.    It was further part of the scheme that defendant WARREN BALLENTINE

represented buyers recruited by co-schemers Wanda Rivera-Burton and Brenda Tibbs, and

others, at real estate closings, knowing that the buyers had been fraudulently qualified for

mortgage loans to purchase properties, including properties located at 912 W. 86th Place,

Chicago, Illinois, 18533 Willow Street, Country Club Hills, Illinois, 18529 Walnut Avenue,

Country Club Hills, Illinois, 22148 Meadow Lake, Richton Park, Illinois, 4826 S.

Summerhill Drive, Country Club Hills, Illinois, 15811 S. Turner Avenue, Markham, Illinois,

15625 S. Turner Avenue, Markham, Illinois, 15631 S. Turner Avenue, Markham, Illinois,

4822 S. Summerhill Drive, Country Club Hills, Illinois, 15816 Spaulding Avenue, Markham,

Illinois, 13905 S. Wabash, Chicago, Illinois, 18553 Walnut Avenue, Country Club Hills,

Illinois, 18565 Walnut Avenue, Country Club Hills, Illinois, 18571 Walnut Avenue, Country

Club Hills, Illinois, 22108 Meadow Lake Place, Richton Park, Illinois, 7819 S. Lowe

Avenue, Chicago, Illinois, 9103-05 S. Ellis Avenue, Chicago, Illinois, 8432 S. Peoria

Avenue, Chicago, Illinois, 1296 South Creek Drive, Manteno, Illinois, and 22903 Richton

Square Road, Richton Park, Illinois.

6.    It was further part of the scheme that defendant WARREN BALLENTINE advised buyers at closings to sign documents that defendant BALLENTINE knew contained materially false representations, including, for example:

(a)    occupancy statements submitted to lenders that defendant BALLENTINE knew contained false and fraudulent information representing that buyers intended to use the properties they were purchasing as their primary residence;

(b)    HUD-1 settlement statements submitted to lenders that defendant BALLENTINE knew contained false and fraudulent information about payments provided to the buyers for purchasing the properties; and

(c)    loan applications submitted to lenders that defendant BALLENTINE knew contained false and fraudulent information, including false and fraudulent information about the buyers' intention to use the property as a primary residence.

7.    It was further part of the scheme that defendant WARREN BALLENTINE represented individual buyers at multiple closings within short time frames, knowing that the buyers were falsely representing that they would use each property they purchased as their primary residence, including:

(a)    Buyer C, who obtained approximately $790,000 in loans to purchase

9

two properties falsely represented to be owner-occupied, as detailed below:

    (i)    On or about March 28, 2005, a $395,000 loan to purchase a property at 22148 Meadow Lake, Richton Park, Illinois; and

    (ii)    On or about April 11, 2005, a $395,000 loan to purchase a property at 4826 S. Summerhill Drive, Country Clubs Hills, Illinois;

(b)    Buyers D and E, who obtained approximately $720,000 in loans to purchase three properties falsely represented to be owner-occupied, as detailed below:

    (i)    On or about May 2, 2005, a $295,000 loan to purchase a property at 15811 S. Turner Avenue, Markham, Illinois;

    (ii)    On or about May 27, 2005, a $240,000 loan to purchase a property at 15625 S. Turner Avenue, Markham, Illinois; and

    (iii)    On or about June 3, 2005, a $240,000 loan to purchase a property at 15631 S. Turner Avenue, Markham, Illinois;

(c)    Buyer F, who obtained approximately $825,000 in loans to purchase three properties falsely represented to be owner-occupied, as detailed below:

    (i)    On or about June 13, 2005, a $385,000 loan to purchase a

property at 4822 S. Summerhill Drive, Country Club Hills, Illinois;

(ii)     On or about June 16, 2005, a $270,000 loan to purchase a property at 912 W. 86th Place, Chicago, Illinois; and

(iii)    On or about July 12, 2005, a $170,000 loan to purchase a property at 13905 S. Wabash Avenue, Chicago, Illinois;

(d)     Buyer G, who obtained approximately $995,000 in loans to purchase three properties falsely represented to be owner-occupied, as detailed below:

(i)      On or about August 26, 2005, a $370,000 loan to purchase a property at 18565 Walnut Avenue, Chicago, Illinois;

(ii)     On or about September 29, 2005, a $226,000 loan to purchase a property at 22108 Meadow Lake Place, Richton Park, Illinois; and

(iii)    On or about October 11, 2005, a $265,000 loan to purchase a property at 7819 S. Lowe Avenue, Chicago, Illinois; and

(e)     Buyer H, who obtained approximately $578,000 in loans to purchase two properties falsely represented to be owner-occupied, as detailed below:

(i)      On or about April 11, 2006, a $300,000 loan to purchase a

11

property at 1296 S. South Creek Drive, Manteno, Illinois; and

(ii)     On or about May 19, 2006, a $278,000 loan to purchase a

property at 22903 Richton Square Road, Richton Park, Illinois.

8.     It was further part of the scheme that defendant WARREN BALLENTINE was

paid for serving as an attorney in transactions where defendant BALLENTINE knew buyers

were signing and submitting false documents to lenders.

9.     It was further part of the scheme that defendant WARREN BALLENTINE, co-

schemers Wanda Rivera-Burton and Brenda Tibbs, and others, did misrepresent, conceal, and

hide, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the

scheme and the purpose of those acts.

10.     On or about June 16, 2005, at Chicago, in the Northern District of Illinois,

Eastern Division, and elsewhere,

WARREN BALLENTINE,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to

be transmitted by means of wire communication in interstate commerce certain writings,

signs, and signals, namely, an interstate wire transfer processed through the Federal Reserve

System in New Jersey in the amount of approximately $214,460 from a Fremont Investment

and Loan account to a Professional National Title Network account at Bank One, J.P.

Morgan Chase, which funds represented the proceeds of a mortgage loan from Fremont

Investment and Loan to finance Buyer F's purchase of 912 W. 86th Place, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     The allegations in paragraphs 1(a), (d), (e), and (f) of Count One of this indictment are incorporated here.

2.     At times material to this indictment:

a.     Community First Bank was a lender that made loans secured by mortgages, and was an institution whose deposits were insured by the Federal Deposit Insurance Corporation.

3.     Beginning no later than in or about December 2004, and continuing until in or about February 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

WARREN BALLENTINE,

defendant herein, along with others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme to defraud and to obtain money and funds owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

4.     The allegations in paragraphs 3 through 8 of Count One of this indictment are incorporated here.

5.     On or about February 4, 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

14

WARREN BALLENTINE,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by

causing Community First Bank, a financial institution insured by the Federal Deposit

Insurance Corporation, to fund a loan in the amount of approximately $299,940 for Buyer

A's purchase of 1506 S. Spaulding Avenue, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

15

## COUNT FOUR

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     The allegations in paragraphs 1(a), (d), (e), and (f) of Count One of this indictment are incorporated here.

2.     The allegations in paragraph 2(b) of Count Two of this indictment are incorporated here.

3.     At times material to this indictment:

      a.     Fremont Investment and Loan was a lender that made loans secured by mortgages.

4.     Beginning no later than in or about January 2005, and continuing until in or about May 2006, in the Northern District of Illinois, Eastern Division, and elsewhere,

WARREN BALLENTINE,

defendant herein, along with others known and unknown to the Grand Jury, knowingly executed and attempted to execute a scheme to defraud and to obtain money and funds owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

5.     The allegations in paragraphs 4 through 9 of Count Two of this indictment are incorporated here.

6.     On or about June 16, 2005, at Chicago, in the Northern District of Illinois,

16

Eastern Division, and elsewhere,

WARREN BALLENTINE,

defendant herein, knowingly executed and attempted to execute the scheme to defraud by causing Fremont Investment and Loan, a financial institution insured by the Federal Deposit Insurance Corporation, to fund a loan in the amount of approximately $216,000 for Buyer F's purchase of 912 W. 86th Place, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1344.

## COUNT FIVE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about February 4, 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WARREN BALLENTINE,

defendant herein, knowingly caused to be made a false statement to Community First Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of Community First Bank upon a mortgage loan for Buyer A's purchase of 1506 S. Spaulding Avenue, Chicago, Illinois, in that defendant caused Buyer A to state in an occupancy statement dated February 4, 2005, that Buyer A intended to occupy the property at 1506 S. Spaulding Avenue, Chicago, Illinois, as her principal residence, when defendant knew that such statement was false;

In violation of Title 18, United States Code, Sections 1014 and 2.

18

## COUNT SIX

The SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about June 16, 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### WARREN BALLENTINE,

defendant herein, knowingly caused to be made a false statement to Fremont Investment and Loan, the deposits of which were insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of Fremont Investment and Loan upon a mortgage loan for Buyer F's purchase of 912 W. 86th Place, Chicago, Illinois, in that defendant caused Buyer F to state in an occupancy affidavit dated June 16, 2005, that Buyer F intended to occupy the property at 912 W. 86th Place, Chicago, Illinois, as her principal residence, when defendant knew that such statement was false;

In violation of Title 18, United States Code, Sections 1014 and 2.

## FORFEITURE ALLEGATION ONE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      The allegations of Counts One, Three, and Five of this indictment are incorporated here for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2.      As a result of his violations of Title 18, United States Code, Sections 1341 and 1344, as alleged in Counts One, Three, and Five of this indictment,

WARREN BALLENTINE,

defendant herein, shall forfeit to the United States, any and all right, title, and interest he may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offenses charged in Counts One, Three, and Five.

3.      The interests of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2) include, but are not limited to, approximately $3,662,000.

4.      If any of the property subject to forfeiture and described above, as a result of any act or omission of defendant:

        (a)      cannot be located upon the exercise of due diligence;

        (b)      has been transferred or sold to, or deposited with, a third party;

        (c)      has been placed beyond the jurisdiction of the Court;

        (d)      has been substantially diminished in value; or

        (e)      has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461.

All pursuant to Title 18, United States Code, Section 982(a)(2).

## FORFEITURE ALLEGATION TWO

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     The allegations of Counts Two, Four and Six of this indictment are incorporated here for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2.     As a result of his violations of Title 18, United States Code, Sections 1343 and 1344, as alleged in Counts Two, Four, and Six of this indictment,

## WARREN BALLENTINE,

defendant herein, shall forfeit to the United States, any and all right, title, and interest he may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offenses charged in Counts Two, Four and Six.

3.     The interests of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2) include, but are not limited to, approximately $6,113,000.

4.     If any of the property subject to forfeiture and described above, as a result of any act or omission of defendant:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the Court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461.

All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL:

_____
FOREPERSON

_____
ACTING UNITED STATES ATTORNEY